UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| ROBERT BURGETT, et al., | ) |
| Plaintiffs, | ) Civil No. 12-25-ART |
| v. | ) |
| TROY-BILT LLC, et al., | ) **MEMORANDUM OPINION** |
| Defendants. | ) **AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Litigation and boxing are not so different. Some fights are won after a long, drawn-out battle that leaves both parties bruised and battered. *See* Joe Jeannette versus Sam McVey (Apr. 17, 1909) (three-and-a-half hours). And some are won after one knockout punch that ends the match just as it begins. *See* Jimmy "Thunder" Peau versus Crawford Grimsley (Mar. 18, 1997) (one-and-a-half seconds). Kohler Co., one of the defendants, hoped to do just that when it filed its motion for summary judgment against plaintiffs Robert and Donna Burgett in this product liability case. R. 38. And Kohler lands decisive blows to the Burgetts' implied warranty and negligent warning claims. But the Burgetts' other claims remain standing and deserve to fight another round. Kohler's motion is therefore granted in part and denied in part.

## BACKGROUND

In January 2010, Robert Burgett bought a Troy-Bilt Bronco riding lawnmower from the Lowe's Home Center in Paintsville, Kentucky. That summer, Burgett took the mower out to his hilly front lawn. But riding mowers are not intended for hilly terrain. The mower

tipped "back, up and to the side," R. 13-1 at 1, throwing Burgett from the driver's seat. A pressure kill switch should have shut off the mower's engine once Burgett fell off. But that switch failed, and the mower continued to run. The mower righted itself, turned back downhill toward Burgett, and ran over his foot. As a result of the accident, doctors amputated two of Burgett's toes.

On June 9, 2011, Robert Burgett and his wife Donna filed suit in Pike Circuit Court against several defendants, including Kohler Company, the engine supplier for Troy-Bilt's riding mowers. R. 1-3 at 14. The Burgetts believe that a malfunction in Kohler's engine or engine harness caused the kill switch to fail. R. 13-2, ¶¶14, 17(B). So the Burgetts want to hold Kohler liable for manufacturing, design, and warning defects in the engine or engine harness. They also believe that Kohler breached its implied warranties of merchantability, fitness for a particular purpose, and fitness for an ordinary purpose. *Id.*

On February 16, 2012, the parties jointly inspected the Burgetts' riding lawnmower. The engine and engine harness were all fully operational during this inspection. R. 38-1 at 2–3; R. 39. From Kohler's inspection of the mower the engine harness did not appear to be damaged in any way. R. 39. The next day, Defendants removed this case to federal court. R. 1. After the initial jurisdictional issues were resolved, Kohler filed for summary judgment. R. 38.

## ANALYSIS

Kohler seeks summary judgment on all of the Burgetts' claims. There are no points decisions at the summary judgment stage, only knockouts. Kohler must deliver the Federal Rules' equivalent of a knockdown: a showing that no genuine issues of material fact remain in support of the Burgetts' allegations. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If Kohler meets this burden, the Burgetts must lift their claims off the mat with specific facts disputing Kohler's arguments and demonstrating the existence of triable issues. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In this case, the burden-shifting framework is complicated by the fact that the parties are in the early stages of discovery in federal court. *See* R. 38 (Kohler's Motion for Summary Judgment); R. 40 (Scheduling Order); R. 44 at 2–3 (describing state court discovery). Where the nonmovant believes that it needs additional discovery to properly contest a motion for summary judgment, the nonmovant may file an affidavit stating the specific facts it seeks and the reason those facts were not previously available. Fed. R. Civ. P. 56(d) (formerly Rule 56(f)); *Back v. Hall*, No. 06-05-ART, 2012 WL 369425, at *5 (E.D. Ky. Feb. 3, 2012) (citing *Gettings v. Bldg. Laborers Local 310*, 349 F.3d 300, 305 (6th Cir. 2003)). A Rule 56(d) affidavit will usually shield the nonmovant from summary judgment, with a few exceptions. Affidavits cannot be speculative or vague, and the facts an affidavit seeks must be sufficient to change the Court's analysis. *Alspaugh v. McConnell*, 643 F.3d 162, 167 (6th Cir. 2011). Here, additional discovery would not save the Burgetts' implied warranty claims, and they have failed to submit a proper Rule 56(d) affidavit on their

negligent warning defect claim. But the Burgetts have demonstrated that discovery may produce enough facts to escape summary judgment on their other claims.

I.  **Manufacturing Defect**

The Burgetts believe that Kohler is liable—either through negligence or strict liability—for a manufacturing defect in the riding mower's engine or engine harness. R. 13-2 at 8. Under either theory, the Burgetts must show that their mower "was not manufactured or assembled in accordance with its specifications" and that the deviation was a "substantial factor" in Mr. Burgett's injury. *Greene v. B.F. Goodrich Avionics Sys.*, 409 F.3d 784, 788 (6th Cir. 2005). The Burgetts can rely on circumstantial evidence if that evidence is enough to "tilt the balance from possibility to probability" that a manufacturing defect was a cause of the accident. *Low v. Lowe's Home Centers, Inc.*, 771 F. Supp. 2d 739, 744 (E.D. Ky. 2011) (citing *Greene*, 409 F.3d at 788).

Kohler believes that its February inspection of the Burgetts' mower eliminates the possibility that a manufacturing defect in the engine or engine harness was the cause of the accident. R. 38-1 at 6–7. The Burgetts disagree. In response, they argue that the engine or engine harness suffers intermittent electrical failure, and that they need additional discovery to uncover evidence of this fact. R. 43 at 7–9. In support of this argument, the Burgetts submitted an affidavit from Mr. Jay Nogan.

Nogan's affidavit meets the requirements of Rule 56(d). First, the affidavit attests that further discovery is needed to prove that a defect in the engine harness caused the kill switch malfunction. *See Back*, 2012 WL 369425, at *5 (listing the requirements for a Rule 56(d) affidavit). Nogan states that "complete disassembly of the wiring circuitry . . . and

further testing and discovery" could uncover evidence that thinning wire insulation, cracked wire insulation, or unseated connectors caused the kill switch failure. *See, e.g.*, R. 43-8 at 4–7. Second, the affidavit explains why the Burgetts were unable to obtain this information before Kohler's motion for summary judgment. *Back*, 2012 WL 369425, at *5. Nogan states that the February inspection did not eliminate the possibility of a manufacturing defect because the problem might be intermittent, and the parties did not conduct circuit testing. And Nogan did not perform this testing during prior inspections because it could spoil evidence, and because discovery of "diagrams and exemplar products and parts [was] necessary before such testing [could] be adequately performed." R. 43-8 at 7–8; *see also Alspaugh*, 643 F.3d at 166–67.

Kohler offers a flurry of counters why Nogan's affidavit is insufficient under Rule 56(d), but its arguments are unpersuasive. First, Kohler states that Nogan's testimony improperly relies on Kohler's May 5, 2011, recall notice. R. 44 at 5−6. This notice applied to the Kohler engine in a similar Troy Bilt mower, and warned of a kill switch failure caused by engine malfunction (the same problem the Burgetts believe occurred in their case). R. 43-8 at 3. Nogan notes that the recalled engine harness was the same or very similar to the one in the Burgetts' mower. *Id.*

Kohler contends that the notice is inadmissible evidence of a subsequent remedial measure. *See* Fed. R. Ev. 407; *Bryan v. Emerson Elec. Co.*, 856 F.2d 192, at *2 (6th Cir. 1988) (unpublished table decision). But nothing in Rule 56(d) requires that the affidavit be based on admissible evidence. *See, e.g.*, *Simas v. First Citizens' Fed. Credit Union*, 170 F.3d 37, 46 (1st Cir. 1999) ("[A] Rule 56(f) proffer need not be presented in a form suitable for

admission as evidence at trial, so long as it rises sufficiently above mere speculation." (quotation omitted)); *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 813 (2d Cir. 1994) (same); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191 (5th Cir. 1991) (same). Thus, Nogan's partial reliance on the 2011 recall notice—which appears to indicate either a manufacturing or design defect in a similar mower—was not improper. And even if Nogan improperly relied on the recall notice, Kohler is wrong that the recall notice "forms the sole foundation" for Nogan's affidavit. R. 44 at 6. The affidavit's theories of water damage or faulty wire insulation are independent grounds for liability and are distinct from the damaged connectors described in the recall notice. R. 43-8 at 1, 4–5. So Nogan's affidavit would still meet all the requirements of Rule 56(d) without its discussion of the recall notice.

Second, Kohler argues that the Nogan affidavit contains only legal conclusions. R. 44 at 7, and is unsupported by facts, R. 44 at 8–9. This is incorrect. Nogan's affidavit describes several plausible causes of engine or engine harness failure and points to specific evidence that elevates his theories to a non-speculative level—including the age of the tractor, the fact that it was stored outside, and the 2011 recall notice. R. 43-8. The affidavit also explains why, in Nogan's expert opinion, the February test was inadequate to eliminate these theories. *Id.* Thus, the affidavit contains more than legal conclusions supported by speculation. *See, e.g.*, *Pan Am. Pharm., Inc. v. Shelin*, 980 F.2d 730, at *5 (6th Cir. 1992) (unpublished table decision) ("[A party] cannot defeat a motion for summary judgment by merely restating the conclusory allegations contained in his complaint, and amplifying them only with speculation about what discovery might uncover." (internal citations omitted)).

6

Third, Kohler pounces on Nogan's statement that "electrical components either work or do not work" to argue that the affidavit actually supports Kohler's position that the February test negates the possibility of electrical failure. R. 44 at 7. Kohler's argument misreads Nogan's affidavit. The affidavit contrasts electrical failure, where a damaged device ceases to function, and mechanical failure, where a damaged device might continue to function (for example, a leaking sink). R. 43-8 at 4. Nogan argues that in any given inspection electrical devices either operate, as in the February test, or do not, as in the June accident. *Id.* But this description is not meant to foreclose the possibility that an electrical device might intermittently stop working.

Fourth, Kohler claims that the February inspection included the connector testing that Nogan's affidavit requests. R. 44 at 7–8. But Nogan's affidavit attests that the February inspection was insufficiently detailed and did not include complete circuit testing. R. 43-8 at 7–9. As noted above, the Nogan affidavit sufficiently describes why prior inspections were insufficient to eliminate all genuine disputes of material fact and how further testing and discovery could support the Burgetts' theories.

Finally, Kohler argues that even if the Nogan affidavit qualifies as a Rule 56(d) affidavit, the Burgetts have been dilatory in their discovery efforts. R. 44 at 12–13. But Nogan's affidavit gives several reasons why he has yet to thoroughly test the mower, including concerns about spoliation of evidence and the need for pre-testing discovery. R. 43-8 at 7–8. And despite Kohler's arguments about the length of state-court discovery, all parties requested extensive federal discovery when the case reached this Court. R. 36 (Joint Report of Rule 26(f) Planning Meeting, requesting close of discovery in August 2013). So it

is far from clear that any of the parties in this case conducted comprehensive state court discovery. While Kohler may be dissatisfied with the pace of litigation, the parties set the pace in motion when they requested lengthy discovery in federal court.

## II. Design Defect

Burgett also charges Kohler with the negligent design of the mower's engine and engine harness. To establish a design defect, the Burgetts must demonstrate that the "design [] selected by the manufacturer" was "unreasonably dangerous," and that the manufacturer could have selected a safer design. *Nichols v. Union Underwear Co.*, 602 S.W.2d 429, 433 (Ky. 1980); *see also Low*, 771 F. Supp. at 741.

Kohler states that the Burgetts have not produced any evidence supporting the existence of an alternative feasible design. R. 38-1 at 8. The Burgetts respond that they need to discover why the engine or engine harness failed before they can propose an alternative design. R. 43 at 14. In support of this response they point to the Nogan affidavit. *Id.* As noted above, this affidavit describes the reasons why the Burgetts need additional discovery to uncover evidence that Kohler's engine caused the kill switch failure. Thus, the Burgetts adequately explain their failure to present an alternative design. As with their manufacturing defect claim, the Burgetts' are entitled to escape summary judgment on their design defect claim.

## III. Duty to Warn

The Burgetts claim that Kohler breached its duty to warn them of the mower's dangers under both negligence and strict liability theories. A manufacturer is strictly liable if it failed to warn the plaintiff of dangers in the product's design that rendered it unreasonably

dangerous. *Tipton v. Michelin Tire Co.*, 101 F.3d 1145, 1149 (6th Cir. 1996) (citing *C & S Fuel, Inc. v. Clark Equip. Co.*, 552 F. Supp. 340, 347 (E.D. Ky. 1982)). Alternatively, a manufacturer is liable for negligence if it knew or had reason to know that its product was likely to be dangerous, had no reason to expect the plaintiff would know it, and failed to exercise reasonable care to give an adequate warning. *Tipton*, 101 F.3d at 1149–50; *Low*, 771 F. Supp. 2d at 742.

Kohler says that its engine and engine harness conformed to the generally recognized design and manufacturing standards, and that the Burgetts have no admissible evidence supporting their failure to warn claim. R. 38-1 at 8–9; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (explaining that a defendant may carry its burden on summary judgment by demonstrating "an absence of evidence to support the nonmoving party's case"). The Burgetts respond that they need additional discovery to determine (1) the cause of the kill switch's failure, R. 43 at 9, and (2) whether Kohler's recall notice indicates that they knew about the dangers in the Burgetts' mower. R. 43 at 14.

The Burgetts' strict liability claim survives for the same reason their design defect claim survives. If the Burgetts prove that the Kohler engine was unreasonably dangerous, they may be able to demonstrate that Kohler did not warn them of the inherent dangers in the engine's design. And the Burgetts have demonstrated why additional discovery is required to make this showing. R. 43-8. Once the Burgetts know why the kill-switch failed, they might be able to argue that the engine was unreasonably dangerous. And if they can marshal an argument that the engine was unreasonably dangerous, they might be able to argue that Kohler did not warn them of its dangers. Kohler's contention that the engine was "state of

9

the art," R. 38-1 at 8—which the Burgetts appear to contest, R. 43 at 13, is not a complete defense to liability. *See Jordan v. Massey-Ferguson, Inc.*, 100 F.3d 956, at *3 (6th Cir. 1996) ("[While] industry standards are relevant; [] an industry may not adopt a careless standard . . . .") (unpublished table decision). Of course, if this additional discovery does not support the Burgetts' theory of the case then Kohler will be entitled to summary judgment. But the claim survives for now.

The Burgetts' claim of negligent failure to warn is trickier. The Burgetts have presented no evidence that Kohler knew or had reason to know that its engine was likely to be dangerous. *Tipton*, 101 F.3d at 1149–50. Nor do they argue how Kohler's recall of a similar engine over a year after Mr. Burgett's accident could lead to admissible evidence of Kohler's knowledge. Nogan's affidavit does not speak to Kohler's knowledge of the engine's dangers, and the Burgetts have not submitted another Rule 56(d) affidavit addressing this fact. The Burgetts' statement in their response that "at this point we don't know what Kohler knew," R. 43 at 14, is too vague under Rule 56(d), even if the Court were to consider it in lieu of a formal affidavit. *See Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004) ("It is not an abuse of discretion for the district court to deny the discovery request when the party makes only general and conclusory statements [in its affidavit] regarding the need for more discovery . . . ." (internal quotation omitted)).

The Burgetts' speculation about what discovery might uncover is insufficient for their negligent warning claim to escape summary judgment. *See, e.g.*, *Pan Am. Pharms., Inc.*, 980 F.2d at *6. The Burgetts could have preserved this claim by complying with the requirements of Rule 56(d). They did not.

## IV. Implied Warranties

Burgett claims Kohler breached its implied warranties of merchantability, fitness for a particular purpose, and fitness for an ordinary purpose. R. 13-2. Kohler believes that summary judgment is appropriate because the Burgetts cannot demonstrate the privity of contract required for implied warranty claims. R. 38-1 at 5–6; *see also Compex Int'l Co., Ltd. v. Taylor*, 209 S.W.3d 462, 465 (Ky. 2006) (privity must be between buyer and seller, not the manufacturer if the manufacturer is not also the seller).

The Burgetts appear to concede that they cannot maintain their implied warranty claims. R. 43 at 11 ("It appears that Kohler's interpretation of implied warranties may be well taken . . . ."). But Kohler would be entitled to victory even without the Burgetts' concession. Kentucky's Uniform Commercial Code ("U.C.C.") requires parties alleging a breach of warranty claim to establish a buyer-seller relationship between the commercial seller and the plaintiffs. Ky. Rev. Stat. Ann. § 355.2-318 (excepting the buyer's family, household, and guests who are reasonably expected to use the warranted product); *Compex Int'l Co. Ltd.*, 209 S.W.3d at 465.

The Burgetts do protest that Kohler's owner's manual expressly provided them warranties to the quality of the engine. R. 43 at 12; *see also Compex Int'l Co., Ltd.*, 209 S.W.3d at 465 ("Contract liability for breach of warranty arises not from the common law, but from the terms of the contract and the statutory provisions of the U.C.C."). But the Burgetts never sued Kohler for breach of its express warranties. And, in any case, Kohler's warranty that its engine will be free of manufacturing defects limits Kohler's obligation to

11

replacement and repair of the defective engine. R. 43-10 at 2. The Burgetts seek a different remedy—monetary damages. The Burgetts' implied warranty claims fail.

## VI. Loss of Consortium

Mrs. Burgett believes that she has lost the consortium of her husband because of his injuries. Under Kentucky law, loss of consortium is a separate cause of action, but it is derivative of the underlying tort claim. *Floyd v. Gray*, 657 S.W.2d 936, 941 (Ky. 1983). Because some of Mr. Burgett's primary claims remain to support Mrs. Burgett's loss-of-consortium claim, this derivative claim survives. *See, e.g.*, *Eilerman v. Cargill, Inc.*, 195 F. App'x 314, 319–20 (6th Cir. 2006) (applying this reasoning to claims under Ohio law); *Boggs v. 3M Co.*, No. 11-57-ART, 2012 WL 3644967, at *12 (E.D. Ky. Aug. 24, 2012).

## CONCLUSION

It is therefore **ORDERED** that Kohler's motion, R. 38, is **GRANTED** on the Burgetts' implied warranty and negligent warning claims. Kohler's motion is **DENIED** on the rest of the Burgetts' claims.

This the 1st day of November, 2012.



Signed By:
*Amul R. Thapar* AT
United States District Judge