UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| ROBERT BURGETT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 12-25-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| TROY-BILT LLC, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The witness stand is not a circus—there is no "Come One, Come All" sign inviting anyone who wishes to speak to step right up. Instead, witnesses and their proposed testimony must meet certain requirements. The Federal Rules of Evidence set out different rules for different types of witnesses. Expert witnesses, the type of witness at issue in this case, must have expertise in the subject on which they plan to offer an opinion. Because the plaintiffs' expert witness, Jay Nogan, lacks the required expertise, the defendants' motion in limine to exclude his testimony must be granted.

## BACKGROUND

The Burgetts live in Belfry, a town in the undulating hills of eastern Kentucky. *See* R. 96-1 at 6 ¶ 20; R. 102 at 6 ¶ 20. Like all good neighbors, they keep their yard tidy. For years, Robert Burgett used a riding mower to cut his grass; never once did he encounter a problem. R. 96-1 at 7 ¶ 22; R. 102 at 6 ¶ 22, 7 ¶ 32. Just over a year ago, this changed. Burgett was cutting his grass when the mower allegedly tipped back and threw him from his seat. R. 1-3 at 7 ¶ 17; R. 96-1 at 7–8 ¶¶ 21–28; R. 102

1

at 6–7 ¶¶ 21–28.  Burgett claims that the driverless mower turned 180 degrees and charged downhill toward him.  R. 1-3 at 7 ¶ 17; R. 96-1 at 7–8 ¶ 25; R. 102 at 6 ¶ 25. Sadly, the mower's blades sliced through his foot, nearly amputating at least one toe. R. 1-3 at 7 ¶ 17, 136; R. 96-1 at 8 ¶ 27; R. 102 at 7 ¶ 27.

After the accident, the Burgetts filed this suit.  They allege, among other things, that the defendants' negligence in manufacturing or designing the mower caused Robert Burgett's injury.  R. 1-3 at 8 ¶ 21.  They believe that an electrical defect caused one of the mower's critical safety features, the operator presence control switch, to fail.  *Id.* at 7 ¶ 17.  Under normal circumstances, the switch prevents the mower from running if no one is in the driver's seat.  R. 96-1 at 5 ¶ 13. According to the Burgetts, the switch's failure allowed the mower to run amok without a driver at its helm—and ultimately to run over Robert Burgett's foot.  R. 1-3 at 7 ¶ 17.

To prove their defective design claim, the Burgetts have retained an expert, Jay Nogan.  R. 96-1 at 1.  The Burgetts asked Nogan to opine on whether design or manufacturing defects in the mower caused Robert Burgett's accident and injuries.  R. 95-9 at 2.  Nogan came to three conclusions: (1) that the mower was "defective" and that the defect was located somewhere in the mower's seat switch or the ground circuit in its chassis wiring harness, R. 97-11 at 6; (2) that the warnings in the mower's operating manual and on the mower itself would not have prevented the average person from mowing the Burgetts' yard on the day of the incident, *see* R. 95-9 at 3–5; and (3) that Robert Burgett's injuries were consistent with his description of the events, *see id.* at 6.

2

The defendants have filed a motion in limine to exclude Nogan's testimony. R. 96. They make two arguments: (1) that Nogan is not qualified to testify as an expert in this case, and (2) that Nogan's opinions are not reliable. R. 96-1 at 23–31. As the parties seeking to admit Nogan's testimony, the Burgetts bear the burden of proving, by a preponderance of the evidence, that his testimony is admissible. *See Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

## DISCUSSION

When a party's expert witness is challenged, the Court assumes the role of a gatekeeper to ensure that the expert's testimony is reliable and relevant. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Federal Rule of Evidence 702 guides the Court through this inquiry. Rule 702 specifies, first, that an expert must be qualified to testify through knowledge, skill, experience, training, or education. Fed. R. Evid. 702. A qualified expert may then testify so long as his opinions will aid the fact finder and are reliable, meaning they are based on sufficient data, reliable methods, and the facts of the case. Fed. R. Evid. 702(a)–(d); *see In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008). The Supreme Court in *Daubert* provided a list of factors for trial courts to consider as they evaluate the reliability of scientific expert testimony. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529. These factors are nonexclusive, however, and a district court has "considerable leeway" in making its determination under Rule 702 and *Daubert*. *See Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 868 (6th Cir. 2006) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

A hearing to decide these issues is unnecessary in this case. Under normal circumstances, a district court may resolve a *Daubert* motion without holding a hearing. *Nelson*, 243 F.3d at 249. A hearing is required only if the record is inadequate to decide the motion. *See Jahn v. Equine Servs., PSC*, 233 F.3d 382, 393 (6th Cir. 2000). In this case, the parties fully briefed the admissibility of Nogan's testimony under *Daubert* and developed an extensive record that includes depositions. *Cf. Nelson*, 243 F.3d at 249; *Barnette v. Grizzly Processing, LLC*, No. 10-cv-77, 2012 WL 293305, at *2 (E.D. Ky. Jan. 31, 2012). Moreover, the Burgetts prefer a resolution without oral argument. R. 102 at 2. During a June 13, 2013, telephone conference, R. 105, the Burgetts informed the Court that Nogan's lengthy deposition transcript, his résumé, and the parties' briefs were all the information the Court needed to make a decision. The Court concurs. No hearing is necessary.

**I. Nogan Is Not Qualified As an Expert Under Federal Rule of Evidence 702**

The defendants contend that Nogan's mechanical engineering qualifications do not equip him to testify about the mower's electrical system, biomechanical issues, or human factors.[1] R. 96-1 at 23–26. They are correct.

Nogan is an experienced mechanical engineer. He graduated from the University of Delaware with a degree in mechanical engineering in 1979. R. 97-1 at 17; R. 99-8 at 2. While Nogan is not licensed as an engineer in any state and never sat for a professional engineer exam, he spent twenty-three years working as an engineer on products like submarines, locomotives, trucks, and heavy machinery. *See*

---

[1] The defendants also allege that Nogan is unqualified to testify about warnings on consumer products, R. 96-1 at 26, but the Burgetts have elected not to pursue their warnings claim. *See* R. 102 at 28.

R. 97-1 at 17–18; R. 99-8 at 1–2. In 2002, Nogan transitioned from practicing as a mechanical engineer to working as a forensic engineer. R. 97-1 at 18; R. 99-8 at 1. Since then, he has received training in accident reconstruction and has examined trucks, motorcycles, mobile equipment, and other machinery. R. 99-8 at 1, 3. Nogan has never designed a lawn mower or otherwise worked for a manufacturer of lawn mowers, R. 97-1 at 20, but he has inspected riding mowers on two occasions, *id.* at 15–16. Despite his years of engineering and forensic experience, however, Nogan lacks expertise in the particular subjects covered in his report: electrical systems, biomechanical issues, and human factors.

### A. Nogan May Not Testify About Electrical Issues

The plaintiffs have not demonstrated that Nogan has the requisite knowledge, skill, experience, training, or education to testify about the mower's alleged electrical issues. *See* Fed. R. Evid. 702.

First, Nogan is not an electrical engineer by education or training. The plaintiffs admit this. R. 102 at 25; *see also* R. 97-1 at 17. And the record supports it: Nogan took only two courses in electrical engineering while in college in the 1970s. R. 97-1 at 17. During one short-term engineering position, he designed part of the electrical system of a heavy machinery prototype. *Id.* at 19. And, as the defendants point out, Nogan has diagnosed an electrical problem like the one alleged in this case only once. *See* R. 95-9 at 10–11; R. 96-1 at 25; R. 97-1 at 42.

Second, instead of emphasizing how Nogan has otherwise developed expertise in electrical engineering, the Burgetts attempt to undercut the credentials of the defendants' expert witness, Daniel J. Martens. R. 102 at 25–27. The Burgetts write,

5

for example, that Nogan's report "demonstrates as much understanding of the electrical issues as does Mr. Martens on behalf of the Defendants. Both of these experts are mechanical engineers, neither is an electrical engineer." *Id.* at 25. The Burgetts also highlight Nogan's broader experience testifying as an expert witness in litigation. *Id.* at 26.

This strategy is unsuccessful. The Court's role is to assess Nogan's credentials, not to weigh Nogan's and Martens's relative qualifications as experts. Moreover, there are two possible conclusions that one can draw from this comparison, and neither helps the Burgetts' case. The first is that Martens is slightly less qualified than Nogan—but that is irrelevant here, where the defendants have asked the Court to examine Nogan's credentials. If the Burgetts wish to challenge the defendants' choice of Martens as an expert, they should have filed a *Daubert* motion of their own. The second is that the dueling experts are equally unprepared to opine on electrical systems. That, too, does not count as a reason to qualify Nogan as an expert. If neither expert has the knowledge, skill, experience, training, or education required to offer reliable and relevant testimony, then neither should testify at trial.

The Burgetts next suggest that because Nogan and Martens employed the same methodology, Nogan must qualify as an expert. *See* R. 102 at 26. The silver bullet, in their view, is *Schuck v. CNH Am., LLC*, 498 F.3d 868 (8th Cir. 2007). R. 102 at 27. *Schuck*, a products liability case, involved a piston failure that resulted in a fire. *Schuck*, 498 F.3d at 873. The defendant argued that the plaintiffs' experts had not used established, reliable methodology to formulate their opinions on the fire's cause. *Id.* at 874. But, the defendant's expert had used precisely the same

6

methodology. *Id.* On this basis, the Eighth Circuit rejected the defendant's challenge to the district court's *Daubert* ruling, stating that "[w]hen a litigant clearly believes a certain methodology is acceptable as shown by his or her own expert's reliance on that methodology, it is disingenuous to challenge an opponent's use of that methodology." *Id.*

The Burgetts' reliance on *Schuck* is misplaced. Unlike in *Schuck*, the defendants are not challenging Nogan's methodology; instead, they are challenging his basic qualifications. *See* R. 96-1 at 23–25. The fact that Nogan and Martens used the same methodology tells us nothing about the threshold question of whether Nogan is qualified as an expert. Imagine, for example, that the plaintiffs had hired a musician instead of an engineer as their expert witness. Even if that musician's methodology and conclusions were unimpeachable, he could not qualify as an expert under the terms of Rule 702 if he lacked knowledge, skill, experience, training, or education in electrical engineering. *See* Fed. R. Evid. 702. The same is true here for Nogan. The fact that he allegedly used the proper methodology does not, by itself, make him an expert.

At the *Daubert* stage, the Court plays a gatekeeping role, seeking to ensure that only experts who offer "[p]ertinent evidence based on scientifically valid principles" will testify at trial. *Daubert*, 509 U.S. at 597. Without the proper background, an expert is not competent to offer such testimony. *See* Fed. R. Evid. 702; *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529. Because the Burgetts provide no evidence to counterbalance Nogan's deposition testimony about his missing electrical engineering credentials, R. 97-1 at 17–19, the Court must conclude that

7

Nogan is not qualified under Rule 702 to testify about electrical issues. *See Downing v. Life Time Fitness*, 483 F. App'x 12, 19 (6th Cir. 2012) (holding that the district court properly excluded a mechanical engineer's testimony where she "failed to present any evidence of her specialized knowledge with respect to fitness assessments"); *Early v. Toyota Motor Corp.*, 277 F. App'x 581, 586 (6th Cir. 2008) (affirming the district court's decision that Nogan was unqualified to opine on automotive design defects and warnings since he had little relevant experience).

## B. Nogan May Not Testify About Biomechanical Issues or Human Factors

Just as Nogan may not testify about electrical issues, he is also unqualified to offer an opinion on biomechanical issues or human factors. Nogan's final report states that "three major aspects of this case . . . deal with biomechanical questions." R. 97-11 at 4. These issues include (1) whether Robert Burgett's injuries are consistent with his account of the incident, (2) what Robert Burgett would have done as he was ejected from his seat, and (3) whether Robert Burgett could have engaged the cruise control switch while falling off the mower. *Id.* Nogan also points out that the question of whether Robert Burgett could have fallen off the back of the mower is biomechanical in nature. *Id.* at 4–5. Both Nogan and the Burgetts acknowledge that Nogan is not a biomechanical expert. *See* R. 97-1 at 23; R. 102 at 27. Still, the Burgetts try several tactics to establish that Nogan's testimony is admissible under Rule 702. All fail.

At the outset, the Burgetts argue that a mechanical engineer does not need specific expertise in biomechanics to offer relevant and reliable testimony concerning

8

these questions. *See, e.g.*, R. 97-11 at 4 (stating that "it is not required to be a highly experienced biomechanical or biomedical expert" to evaluate these issues); R. 102 at 27 (arguing that the issues characterized by the defendants as biomechanical "are in fact issues that any mechanical engineer can address in some respects"). The Court will assume for the sake of argument that some mechanical engineers can competently testify about biomechanics. Even so, the Court must satisfy itself that Nogan's knowledge, skill, experience, training, or education as a mechanical engineer and accident reconstructionist actually qualifies him as an expert on these issues. *See* Fed. R. Evid. 702; *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) ("The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.").

The Burgetts provide no evidence beyond bald assertions that Nogan's mechanical engineering background has prepared him to answer basic biomechanical questions. *See, e.g.*, R. 102 at 27. Nogan himself offers little more to support his qualifications. In his reports, he refers only to his experience sitting in an office chair and playing on his high school basketball team. R. 97-11 at 4. He briefly mentions his work as an accident reconstructionist and expert witness but does not explain how this gives him the expertise required to analyze biomechanical problems. *Id.* His résumé reflects no training in biomechanical analysis. *See* R. 99-8 at 3 (listing professional training experience). The Burgetts have simply not met their burden of showing that Nogan's testimony as to biomechanical issues, given in his capacity as a

9

mechanical engineer and accident reconstructionist, is admissible. *See Nelson*, 243 F.3d at 251.

As an alternative, the Burgetts state that virtually anyone—biomechanical engineer, mechanical engineer, or average Joe—is competent to offer expert testimony on the biomechanical questions in this case. *See* R. 102 at 16 ¶ 71 ("[E]ach 'biomechanical' topic is actually one of common sense known to everyone, including the court and the jury."). This, perhaps, justifies Nogan's references to his office chair observations and high school athletic career. *See* R. 97-11 at 4. It does not, however, explain why the Court should consider Nogan an expert, when his level of expertise in this area is apparently equivalent to that of the general public. At trial, a qualified expert may be called upon to offer his "scientific, technical, or other specialized knowledge" for the benefit of the factfinder. Fed. R. Evid. 702(a). It stands to reason, therefore, that to qualify as an expert in the first instance one should know somewhat more about the subject of one's testimony than the average layman does. *See Berry*, 25 F.3d at 1350. Nogan manifestly lacks this level of expertise. Accordingly, he cannot qualify as an expert.

Third, the Burgetts attempt to reframe the issues that Nogan characterizes as biomechanical as human factor issues. R. 102 at 27. But, Nogan concedes that he lacks the knowledge, skill, experience, training, or education to qualify as an expert on human factors. *See* R. 97-11 at 3 (explaining that a genuine human factors expert would likely have a Ph.D in the field). In fact, Nogan explicitly states that he is not an expert in human factors. *Id.*; R. 97-1 at 25.

Thus, because all of the arguments the Burgetts offer in support of Nogan's qualifications fail, the Court finds that Nogan's testimony on biomechanical issues or human factors must be excluded under Rule 702.

## II.     The Reliability of Nogan's Testimony

The defendants also challenge the reliability of Nogan's opinions. R. 96-1 at 26–31. Because the Court agrees that Nogan is not qualified by knowledge, skill, experience, training, or education as an expert under Federal Rule of Evidence 702, the Court does not need to reach this additional argument.

## CONCLUSION

Accordingly, it is **ORDERED** that the defendants' motion in limine, R. 96, is **GRANTED** and that the testimony of Jay Nogan shall be **EXCLUDED**. The *Daubert* hearing scheduled for Wednesday, July 31, 2013, at 10:00 a.m., at the United States Courthouse in Lexington, Kentucky, R. 106 at 1, is **VACATED**.

This the 11th day of July, 2013.

Signed By:
*Amul R. Thapar*  AT
United States District Judge