UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| ROBERT BURGETT, et al., | ) | |
|---|---|---|
| Plaintiffs, | ) | Civil No. 12-25-ART |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| TROY-BILT LLC, et al., | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

When tragedy strikes, people naturally cast about for a cause. They might attribute what happened to fate or karma; find someone else to blame; or ultimately realize that responsibility lies only with themselves. When a lawn mower accident permanently disfigured Robert Burgett's foot, he and his wife turned to this Court for answers. Based on various products liability theories, the Burgetts believe that four defendants—Troy-Bilt LLC, MTD Products, Inc., Lowe's Home Improvement, LLC, and Lowe's Home Centers, Inc.—caused their injuries. These defendants have moved for summary judgment, claiming that they are not the malefactors the Burgetts seek. Because gaps riddle the Burgetts' evidence in support of their claim, the Court will grant the defendants' motion.

## BACKGROUND

The Burgetts live in Belfry, a town in the undulating hills of eastern Kentucky. R. 110 at 1. Like all good neighbors, they keep their yard tidy. For years, Robert Burgett cut his grass with a riding mower; never once did he encounter a problem. *Id.* Just over a year ago, this changed. Burgett was mowing his lawn when the mower allegedly tipped

back and threw him from his seat. *Id.* Burgett claims that the driverless mower turned 180 degrees and charged downhill toward him.[1] *Id.* The mower's blades sliced through his foot, nearly amputating at least one toe. *Id.* No one witnessed the accident. However, the Burgetts' neighbor, Annabelle Runyon, testified that she heard the sound of the mower running continuously after the accident. R. 97-2 at 17–18.

The Burgetts believe that an electrical defect caused one of the mower's critical safety features, the operator presence control switch, to fail. R. 110 at 2. Under normal conditions, the seat switch stops the mower if the driver leaves his seat. *Id.* According to the Burgetts, when this switch failed, their mower ran amok without a driver at its helm—and ultimately ploughed into Robert Burgett's foot. *Id.* On this theory, the Burgetts brought this products liability suit. They allege that MTD and Troy-Bilt designed a faulty product, manufactured the mower defectively, and omitted crucial warnings. *See* R. 1-3. The Burgetts also claim that the two Lowe's entities (together, "Lowe's") negligently assembled the mower. *Id.* And, Donna Burgett complains of the loss of her husband's consortium. *Id.*

The Burgetts hired one expert witness, Jay Nogan, to testify at trial, but the Court excluded his testimony. R. 110. The defendants now challenge the sufficiency of the Burgetts' remaining evidence in separate motions for summary judgment. R. 94; R. 98. The Court held a hearing on these motions, ordered supplemental briefing, and now issues its opinion in this case. *See* R. 111.

---

[1] The precise details of the accident remain unsettled. For example, a doctor's report from the day of the accident states that Burgett "put his right foot out for balance and ran over his right foot with his mower." R. 94-1 at 11.

2

**DISCUSSION**

Summary judgment is warranted if the pleadings, discovery and disclosure materials, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. To prevail, the defendants must demonstrate that undisputed evidence forecloses the Burgetts' claims or that the Burgetts cannot support their claims with admissible evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The Burgetts must then respond with evidence showing a genuine factual dispute. Fed. R. Civ. P. 56(c)(1); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Relying on pleadings or "metaphysical doubts" will not forestall summary judgment; citing to the record is essential. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). If the Burgetts successfully rebut the defendants' showing, the Court then decides whether a reasonable juror could find for the Burgetts on each of their claims when all reasonable inferences are drawn in their favor. *See id.*

**I.    Summary Judgment Is Justified on All of the Burgetts' Claims Against MTD and Troy-Bilt.**

MTD and Troy-Bilt challenge the Burgetts' five claims: (1) defective design on a negligence theory; (2) defective design on a strict liability theory; (3) defective manufacture; (4) failure to warn; and (5) loss of consortium. *See* R. 94-1. The record is devoid of evidence supporting key elements of the first three claims. The Burgetts concede their fourth claim, and their final claim cannot survive in the absence of an underlying tort. So, the Court must enter summary judgment against the Burgetts.

**A.    Troy-Bilt and MTD Are Entitled to Summary Judgment on the Design Defect Claims.**

The Burgetts allege that Troy-Bilt and MTD designed a defective product. R. 1-3

3

at 8–10. Without evidence of causation or that the design was unreasonably dangerous, their claim cannot survive summary judgment.

A plaintiff bringing a design defect claim must demonstrate two things. First, the product's manufacturer must have breached its duty to use reasonable care to guard against foreseeable dangers. *Ostendorf v. Clark Equip. Co.*, 122 S.W.3d 530, 535 (Ky. 2003). A breach occurs when a design defect renders the product "unreasonably dangerous." *Id.*; *Low v. Lowe's Home Centers, Inc.*, 771 F. Supp. 2d 739, 741 (E.D. Ky. 2011). The trier of fact employs a risk-utility balancing test to evaluate the reasonableness of the design. *Ostendorf*, 122 S.W.3d at 535. That test requires the trier to compare alternative designs to decide whether the manufacturer breached its duty of care. *Id.*

Second, the defect must have been a substantial factor in bringing about the plaintiff's harm—in other words, a legal cause of his injury. *Templeton v. Wal-Mart Stores East, LP*, No. 08-169, 2011 WL 4591937, at *3 (E.D. Ky. Sept. 30, 2011); *Low*, 771 F. Supp. 2d at 745. Circumstantial evidence alone can establish causation if it "tilt[s] the balance from 'possibility' to 'probability.'" *Holbrook v. Rose*, 458 S.W.2d 155, 157–58 (Ky. Ct. App. 1970); *accord Arch Ins. Co. v. Broan-NuTone, LLC*, 509 F. App'x 453, 462 (6th Cir. 2012). To rely on circumstantial evidence, however, the plaintiff must be able to rule out other possible causes of his injury. *Templeton*, 2011 WL 4591937, at *3; *Perkins v. Trailco Mfg. and Sales Co.*, 613 S.W.2d 855, 857–58 (Ky. 1981). In short, "where an injury may as reasonably be attributed to a cause that will excuse the defendant as to a cause that will subject it to liability, no recovery can be had." *Siegel v. Dynamic Cooking Sys.*, 501 F. App'x 397, 405 (6th Cir. 2012) (alterations and internal quotation

4

marks omitted).

The parties dispute whether the plaintiffs need expert testimony to stave off summary judgment on their design defect claim. In most design defect cases, expert testimony plays a crucial role in establishing breach of duty and causation. *See Thomas v. Manchester*, No. 03-705, 2005 WL 3673118, at *1 (W.D. Ky. May 13, 2005) (citing William S. Haynes, *Kentucky Jurisprudence: Torts* § 21-28 (1987)). Under Kentucky law, a plaintiff needs expert testimony when his design defect claim turns on scientific or specialized knowledge that "cannot be determined intelligently from testimony on the basis of ordinary knowledge gained in the ordinary affairs of life." *Templeton*, 2011 WL 4591937, at *3 (quoting *Commonwealth v. Robbins*, 421 S.W.2d 820, 824 (Ky. 1967)) (internal quotation marks omitted). Still, Kentucky law does not expressly predicate recovery on the introduction of expert testimony. *Robbins*, 421 S.W.2d at 824. If the jury can comprehend the facts and draw correct conclusions as well as a specially trained expert could, then the plaintiff can proceed without an expert's help. *Id.*

**Unreasonably Dangerous:** Because of the mower's complex design, the Burgetts need additional evidence or expert testimony to support their claim that MTD and Troy-Bilt breached their duty to protect against foreseeable dangers and designed an "unreasonably dangerous" product. *See Ostendorf*, 122 S.W.3d at 535.

In the first place, the Burgetts have not actually identified a design defect, and they are groping in the dark without expert testimony. The mower is a complex piece of machinery. Its electrical system is intricate. The Court itself would be unable to make heads or tails of a diagram of its electrical system without assistance. Almost any defect—barring something painfully obvious—would require scientific or specialized

5

knowledge to understand. *See Templeton*, 2011 WL 4591937, at *3. Because the Court excluded Nogan's testimony, the Burgetts no longer have an expert witness. *See* R. 110. And they have not exposed a flaw that the jury can comprehend without expert guidance. All they have is Robert Burgett's and Annabelle Runyon's deposition testimony that the mower behaved in a manner inconsistent with its intended design. *See* R. 101 at 31–32. This circumstantial evidence does not narrow down the alleged defect's location in the mower. The Court can speculate about what happened: Did an object get trapped in the seat and depress the seat switch? Did an element of the electrical system fail? Is the answer something even more far-fetched? All are possible conclusions given the limited evidence in the record. Without expert testimony or direct evidence, the Burgetts cannot hope at trial to pluck the right fish out of this sea of possibilities.

Furthermore, the record contains no admissible evidence that an alternative design would have made MTD and Troy-Bilt's product safer. *See Ostendorf*, 122 S.W.3d at 535. Kentucky's risk-utility balancing test requires the jury to evaluate the comparative merits of different electrical systems. *See id.* But, if the jury would need expert guidance to understand the Burgetts' mower, how can the jury compare multiple mowers without an expert's help? The Burgetts originally relied on Nogan to prove the existence of preferable designs. *See* R. 101 at 29–30. Now, without his testimony, they cannot demonstrate that the mower's allegedly defective design was "unreasonably dangerous."

**Causation:** The Burgetts lack evidence to establish another element of their claim, causation. Kentucky law requires them to show that their circumstantial evidence makes it probable, rather than merely possible, that the alleged design defect caused their injury. *Holbrook*, 458 S.W.2d at 157–58. In this case, the parties have proposed multiple

6

possible causes for the Burgetts' injury. Accordingly, the Burgetts must "eliminate[ ] those causes for which [MTD and Troy-Bilt] would not be liable" in order to tip the balance from possibility to probability. *Siegel*, 501 F. App'x at 401.

Where there is only one defendant, a plaintiff can allege multiple theories and still meet this standard. Consider this scenario: Tony's water heater explodes, flooding his basement and destroying his belongings. Direct evidence of what happened is in short supply, but the circumstances indicate that the accident happened because of a problem with one of the heater's pipes. Tony suspects that Heaters-R-Us designed a defective heater, but he also cannot rule out the possibility that Heaters-R-Us forgot a valve when it manufactured Tony's particular heater. So, while Tony has circumstantial evidence to support the causation element of both his design defect and manufacturing defect claims, he cannot say with certainty which claim against Heaters-R-Us is the correct one. Under Kentucky law, if Tony's circumstantial evidence makes it probable that Heaters-R-Us's tortious behavior caused his injury, he need not winnow his two claims to one to survive summary judgment. *See id.* (rejecting a directed verdict where circumstantial evidence equally supported design defect and manufacturing defect claims against the same defendant).

The Burgetts allege a considerably more complicated scenario: they believe that a second pair of defendants, the two Lowe's entities, also independently caused their injury. R. 1-3 at 10. In other words, imagine that Tony brings a design defect claim against Heaters-R-Us and a negligent assembly claim, involving the same water heater, against Slapdash Factory. Once again, the same circumstantial evidence buttresses the causation element of both claims. To proceed against Heaters-R-Us solely on the basis of

7

circumstantial evidence, Tony would have to eliminate all causes for which Heaters-R-Us is not liable. *See Siegel*, 501 F. App'x at 401. This he cannot do. So long as Tony also accuses Slapdash Factory of negligent assembly, there remains an "alternative cause . . . [that] will excuse [Heaters-R-Us] from liability." *Id.* at 403 (internal quotation marks omitted).[2]

Kentucky courts have not squarely addressed whether a plaintiff can satisfy the causation element of alternative tort claims against two separate defendants with the same circumstantial evidence. The reasoning in single-defendant cases, however, suggests that Kentucky law would not permit a plaintiff to proceed against two defendants under these circumstances.[3] *See Ky. Farm Bureau Mut. Ins. Co. v. General Elec. Co.*, No. 09-915, 2011 WL 195615, at *4 (W.D. Ky. Jan. 20, 2011) (refusing summary judgment where the "jury is not left to speculate as to multiple theories of liability because each of the potential causes is attributable to" the same defendant). Therefore, the Burgetts' claim against Lowe's deals the *coup de grâce* to their case, built on circumstantial evidence, that MTD and Troy-Bilt's defective design caused their injury.

---

[2] According to the Burgetts, the Court need not engage in this analysis. Kentucky law permits the apportionment of liability among multiple tortfeasors. Ky. Rev. Stat. § 411.182. The Burgetts believe that the apportionment statute allows them to bypass summary judgment without first showing that they can support the causation element of each of their claims with admissible evidence. *See* R. 114. This misinterprets the law. To reach the point where apportionment of liability matters, the Burgetts must first prove their case against each defendant individually. *See Owens Corning Fiberglass Corp. v. Parrish*, 58 S.W.3d 467, 471 n.5 (Ky. 2001) ("Fault may not be properly allocated to a party, a dismissed party or settling nonparty unless the court or the jury first finds that the party was at fault.").

[3] This does not mean, of course, that a plaintiff can never allege products liability claims against multiple defendants. A plaintiff could, for example, have direct evidence of causation by two separate defendants. Or the plaintiff could have circumstantial evidence that points to two torts operating in tandem. Imagine Tony has proof—whether direct or circumstantial, it matters not—that Heaters-R-Us's design came directly from Victorian England and never evolved to meet modern American manufacturing standards. He has separate evidence that Slapdash Factory accidentally sliced through a wire when building his water heater. Tony's theory is that the assembly defect exacerbated various design defects, resulting in the explosion that destroyed his heater. His claim could survive summary judgment where the Burgetts' claims cannot.

Even if this were not true, the Burgetts' attempt to establish causation would crumble for another reason: they need an expert witness. At trial, the jury would have to weigh a welter of potential causes. For example, Burgett could have driven the mower up too steep a slope. *See, e.g.*, R. 94-1 at 19. Or, as Burgett first reported, he could have simply run over his own foot. R. 94-1 at 11. Or, a third party could have tampered with the mower. *See* R. 113 at 4. To eliminate alternative causes, the jury would have to answer tricky electrical engineering and biomechanical questions—questions far beyond the ken of ordinary persons. *See Templeton*, 2011 WL 4591937, at *4. This calls for an expert.

The dearth of evidence for these two key elements of the Burgetts' design defect claim means that the Court must grant summary judgment on this claim to MTD and Troy-Bilt.

### B. Troy-Bilt and MTD Are Entitled to Summary Judgment on the Manufacturing Defect Claim.

The Burgetts' inability to establish causation also defeats their theory that a manufacturing defect caused their injury. To prevail on a manufacturing defect claim, a plaintiff must show that the product was not "'manufactured or assembled in accordance with its specifications'" and that "the deviation was a 'substantial factor' in his injury." *Low*, 771 F. Supp. 2d at 743 (citing *Greene v. B.F. Goodrich Avionics Sys., Inc.*, 409 F.3d 784, 788 (6th Cir. 2005)). While the Burgetts raise genuine issues of material fact as to the first half of this test, the record contains no evidence to support the second prong.

**The Existence of a Manufacturing Defect:** Drawing all reasonable inferences in the Burgetts' favor, a jury could find the existence of a manufacturing defect in the

9

mower's seat switch or wiring harness. Unlike in a design defect case, a manufacturing defect plaintiff need not "establish precisely *why* the [product] failed, but *whether* it did," to withstand summary judgment. *Siegel v. Ky. Farm Bureau Mutual Ins. Co.*, No. 08-429, 2010 WL 4536769, at *3 (W.D. Ky. Nov. 2, 2010). Put another way, the plaintiff is not required to narrow the field of possible defects to one probable defect. Instead, he "simply must show that there exist material issues of fact as to whether the accident was caused by a problem intrinsic to the [product], as opposed to some external factor." *Id.*; *see Low*, 771 F. Supp. 2d at 743.

The Burgetts' circumstantial evidence creates such material issues of fact. True, Nogan's now-excluded expert report contained much of the Burgetts' evidence of the alleged manufacturing defect. However, the Burgetts can draw on other evidence for their claim that the mower failed due to intrinsic causes. *See Siegel*, 2010 WL 4536769, at *3. This includes Robert Burgett's deposition testimony that the mower continued moving after he fell out of his seat, despite its preventative mechanisms; rotated 180 degrees; and charged downhill toward him. R. 95-6 at 65. Additionally, the Burgetts' neighbor, Annabelle Runyon, testified that she heard the mower's engine continuously running long after the accident. R. 97-2 at 17–18. Of course, there are several possible external causes, including tampering and driver error. *See* R. 94-1 at 19; R. 113 at 4. Still, the deposition testimony raises material issues of fact as to whether the source of the mower's failure was intrinsic or extrinsic. *See Siegel*, 2010 WL 4536769, at *3; *Low*, 771 F. Supp. 2d at 743.

**Causation:** All products liability theories, including design defect and manufacturing defect, share the same requirement that the product be a legal cause of the

alleged harm. *See Holbrook*, 458 S.W.2d at 157. The Burgetts' limited circumstantial evidence prevents them from narrowing down the list of potential tortfeasors to just MTD and Troy-Bilt. *See supra* Part I.A. Therefore, they cannot meet the causation element of their manufacturing defect case under Kentucky law, which requires a party relying on circumstantial evidence to eliminate all other potential causes of their injury to bypass summary judgment. *See id.*

Since the Burgetts cannot support the elements of breach and causation, the Court must grant MTD and Troy-Bilt's motion for summary judgment on the manufacturing defect claim.

### C. The Burgetts Have Abandoned Their Failure To Warn Claim, So Summary Judgment Is Warranted.

The Burgetts have elected not to pursue their claim that MTD and Troy-Bilt failed to warn consumers adequately of the dangers associated with riding mowers. R. 101 at 40. The Court will therefore grant summary judgment on this claim to MTD and Troy-Bilt.

### D. The Court Need Not Evaluate the Parties' Comparative Liability Because It Has Granted Summary Judgment on All Claims Against MTD and Troy-Bilt.

MTD and Troy-Bilt assert, and the Burgetts do not contest, that Kentucky law requires the apportionment of fault among all parties, including Robert Burgett. *See* Ky. Rev. Stat. § 411.182; R. 94-1 at 36–38; R. 101 at 40. Because the Court has granted summary judgment to MTD and Troy-Bilt on all of the Burgetts' claims, the Court need not reach this argument.

11

### E. Donna Burgett's Loss-of-Consortium Claim Fails Because the Court Has Granted Summary Judgment on All Other Claims.

Robert Burgett's wife, Donna, has sued MTD and Troy-Bilt for loss of consortium due to her husband's injuries. Under Kentucky law, loss of consortium is a separate cause of action, but it is "derivative" of the underlying claim. *Boggs v. 3M Co.*, No. 11-57, 2012 WL 3644967, at *12 (E.D. Ky. Aug. 24, 2012); *Floyd v. Gray*, 657 S.W.2d 936, 941 (Ky. 1983). The Court has granted summary judgment on all of the Burgetts' underlying claims—design defect, manufacturing defect, and failure to warn—against MTD and Troy-Bilt. Therefore, no foundation remains for Mrs. Burgett's loss-of-consortium claim, and the Court must grant summary judgment in favor of MTD and Troy-Bilt. *See Boggs*, 2012 WL 3644967, at *12.

## II. The Burgetts' Claims Against Lowe's Do Not Survive Summary Judgment.

Lowe's seeks summary judgment on the Burgetts' negligent assembly and loss of consortium claims. *See* R. 98. These claims, like the Burgetts' claims against MTD and Troy-Bilt, fail for want of evidence in the record to establish a breach of duty and causation.

### A. Lowe's Is Entitled to Summary Judgment on the Burgetts' Negligent Assembly Claim.

The Burgetts claim that Lowe's negligently assembled the mower and trained its employees in assembly techniques. R. 1-3 at 10. They allege that this negligence was a direct and proximate cause of their injuries. *Id.* Under Kentucky law, a negligence claim requires the plaintiff to establish that (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached its duty; and (3) this breach proximately caused the plaintiff's damages. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992).

Everyone agrees that Lowe's had a duty to assemble the mower with the care of a reasonably prudent retailer. *See* R. 98-1 at 22; R. 103 at 26. The parties contest whether Lowe's breached that duty and, if so, whether the breach caused the Burgetts' injuries. Because there are no genuine issues of material fact germane to this dispute, summary judgment in favor of Lowe's is appropriate.

**Breach of Duty:** According to Lowe's, there is no evidence drawing a connection between the mower's assembly and any alleged defect in its seat switch. R. 98-1 at 22–23. The Burgetts, as discussed above, have been unable to pinpoint the location of the mower's alleged defect. *See supra* Part I.A. Still, the Burgetts identify five additional factors that they believe justify a finding that Lowe's breached its duty. R. 103 at 26.

These five factors are of dubious relevance, so they do not add up to a genuine factual dispute that precludes summary judgment. First, the Burgetts present deposition testimony from Billy Cantrell, a Lowe's product assembler. *Id.* Cantrell testified that he learned to assemble mowers by taking video training courses, received no supervision or training from MTD or Troy-Bilt while working at Lowe's, and never read a mower operator's manual. *Id.* at 26–27. But no evidence suggests that Billy Cantrell's training fell short of the standard required of a reasonably prudent assembler.

Second, the Burgetts state that Lowe's did not provide a pre-delivery inspection form, which typically catalogues any assembly-related problems, with the mower at the time of its purchase. *Id.* at 27. No evidence in the record actually establishes the truth of this allegation. *Cf.* R. 99-5 at 12 (stating that it was standard practice to give out PDI forms at Lowe's). And, even if Lowe's did lose the PDI form, this proves nothing about

the assembly process itself; it shows only that Lowe's failed to keep proper records.[4]

Third, the Burgetts point to testimony from Robert Burgett that a Lowe's employee inappropriately instructed him to use ether or starting fuel when he had trouble starting his mower. R. 103 at 27. This too is irrelevant: the instructions occurred over a month after Lowe's assembled and inspected the mower. R. 108 at 4. Moreover, the Burgetts have not shown that anything in the assembly process might have affected the mower's engine, and they do not explain how their one-time difficulty starting the engine relates to Robert Burgett's accident. *See* R. 103 at 27. Fourth, they advert generally to the deposition of Lisa Daniels, a former Lowe's employee, but they never describe how her testimony supports their claim. *See id.* at 28. The Court is at a loss to understand the relevance of Daniels's testimony and has no obligation to connect the dots for the Burgetts. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

Finally, the Burgetts allege that the mower once ejected a clip, which they later learned was designed for shipping purposes and should have been removed at assembly. R. 103 at 28. During oral argument, counsel for the Burgetts stated that the clip is direct evidence of an assembly error, which in turn constitutes circumstantial evidence that Lowe's made a specific assembly mistake related to the seat switch. This argument

---

[4] During oral argument, the Burgetts claimed that the missing PDI form entitled them to a missing evidence instruction at trial. This would permit the jury to infer that Lowe's had not followed its standard assembly procedure. While the Burgetts might be correct under Kentucky law, *see One Beacon Ins. Co. v. Broadcast Development Group, Inc.*, 147 F. App'x 535, 539–43 (6th Cir. 2005), the Sixth Circuit recently reversed its precedent and held that federal courts must apply federal law when crafting such spoliation sanctions. *See Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009). Under federal law, to obtain a missing evidence instruction based on spoliation, the Burgetts would have to prove that: (1) Lowe's had an obligation to preserve the PDI form; (2) it destroyed the PDI form with a culpable state of mind; and (3) the PDI form, if existent, would support their negligent assembly claim. *See Adkins v. Wolever*, 692 F.3d 499, 503–04 (6th Cir. 2012) (citing *Beaven v. United States Dep't of Justice*, 622 F.3d 540, 553–54 (6th Cir. 2010)). The Burgetts have not pleaded these elements. Nor have they pointed to evidence in the record justifying a spoliation instruction or sanctions. No sanction is therefore justified.

strains logic. There is no evidence that the clip came from the seat or from anywhere near the seat switch. Indeed, the parties could not verify at oral argument whether Lowe's assemblers ever had cause to touch a seat switch when unpacking a mower for sale.[5] Drawing all reasonable inferences in the Burgetts' favor, a reasonable jury could not find that this evidence, standing alone, indicates that Lowe's breached its duty in a way that is relevant to this dispute.

**Causation:** Even if there were a genuine dispute of material fact as to the alleged breach, no such dispute exists as to the issue of causation. The Burgetts do not have the direct evidence to show that an assembly error caused their injury. Their limited circumstantial evidence does not help them eliminate MTD and Troy-Bilt's actions as a potential cause of their injury. *Cf. supra* Part I.A. (discussing the requirement under Kentucky law that a party relying on circumstantial evidence to prove causation eliminate all other possible causes). Expert testimony might have bridged the gap, but the Burgetts no longer have that at their disposal. *See id.*; *Templeton*, 2011 WL 4591937, at *4 (holding that evidence of an injury alone could not demonstrate causation in the absence of expert testimony). The Burgetts' evidence, in other words, does not make it probable, rather than possible, that the mower's assembly was a substantial factor in their injury.

Two essential elements of the Burgetts' negligent assembly claim are unsupported by the record. For this reason, the Court must grant summary judgment to Lowe's.

---

[5] As clarification, recall Tony's claim against Slapdash Factory. Say Tony believes that his water heater exploded because of a problem with a pipe at the top of the tank, and Slapdash Factory only installed the thermostat at the bottom of the tank—never touching the pipe at the top. Tony could not successfully bring a negligent assembly claim with respect to the pipe relying exclusively on evidence that Slapdash Factory lived up to its name and improperly fastened the thermostat.

### B. Lowe's Is Entitled to Summary Judgment on the Burgetts' Loss of Consortium Claim.

Robert Burgett's wife, Donna, has also sued Lowe's for loss of consortium due to her husband's injuries. Because the Court has granted summary judgment on the underlying negligent assembly claim, her loss-of-consortium claim must fail. *See Boggs*, 2012 WL 3644967, at *12.

### CONCLUSION

Accordingly, it is **ORDERED** that:

(1) MTD Products, Inc., and Troy-Bilt LLC's motion for summary judgment, R. 94, is **GRANTED**.

(2) Lowe's Home Improvement, LLC, and Lowe's Home Centers, Inc.'s motion for summary judgment, R. 98, is **GRANTED**.

(3) All pending deadlines are **CANCELLED**, and the Clerk shall **STRIKE** this matter from the Court's active docket.

(4) The Court shall enter a separate judgment.

This the 9th day of September, 2013.

Signed By:
*Amul R. Thapar* AT
United States District Judge